UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GERALD ARDOIN                               CIVIL ACTION

VERSUS                                      NO: 07-3210

NORTHSTAR INTERESTS, LC, ET                 SECTION: J(5)
AL

### ORDER AND REASONS

Before the Court is Defendant Northstar Interests, LC's **Motion for Summary Judgment (Rec. Doc. 33)**; Defendant Barry Graham Oil Service, L.L.C.'s **Motion for Partial Summary Judgment (Rec. Doc. 38)**; and Defendants Northstar GOM, L.L.C. and Barry Graham Oil Service, L.L.C.'s **Motion for Partial Summary Judgment of Intervention by Energy Production Fabricators, L.L.C. (Rec. Doc. 40)**.

These motions were set for hearing on June 11, 2008 on the briefs.  Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds as follows.

### Background Facts

Plaintiff was employed as a sandblaster/painter by Energy Production Fabricators, L.L.C. ("EPF").  EPF was providing

painting/blasting services to Northstar Interests, LC ("Northstar"). On June 12, 2006, plaintiff was allegedly injured while in a spider basket on the jump stand of the M/V Grady G, owned by Barry Graham Oil Service, L.L.C. ("Barry Graham"). The M/V GRADY G was tied to the V 161 platform owned by Northstar. The EPF crew was loading the spider basket from the vessel onto the platform.

Plaintiff filed suit on June 11, 2007, naming Northstar and Barry Graham as Defendants and claiming that he received serious, painful, and permanent disabling injuries as a result of the accident. EPF and EPF's insurer, American Home Assurance Company ("American Home"), intervened in the suit on August 30, 2007, asserting an interest in the outcome of the litigation due to the extent of the compensation benefits and medical expenses paid and to be paid to or on behalf of Plaintiff under the Longshoremen and Harbor Workers' Compensation Act ("LHWCA").

## Discussion

**A.   Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden has been met, the non-

moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

**B.   Northstar's Motion for Summary Judgment**

In its motion, Northstar argues that there is no evidence of liability or negligence on the part of Northstar in this matter. In particular, according to Northstar, it did not retain "operational control" over the work of EPF that was underway at the time of Plaintiff's accident.[1]  As a result, Northstar argues that it cannot be held liable for the actions of its independent contractor, EPF.  Furthermore, according to Northstar, there is no evidence of any independent act of negligence on the part of Northstar.

Plaintiff has failed to file an opposition to Northstar's motion.  Because of this, and because this Court determines that the motion has merit, Northstar's motion should be granted.

**B.   Barry Graham's Motion for Partial Summary Judgment**

In support of its motion, Barry Graham argues that there is no evidence of liability or negligence on the part of Barry Graham.  In particular, Barry Graham argues that it was working

---

[1]  At the time of the accident, Northstar had no employees on the V 161 platform or on the M/V GRADY G.  The only individuals on the M/V GRADY G at the time of the accident were the EPF painting crew and the M/V GRADY G crewmembers.

as an independent contractor to Northstar as the M/V GRADY G was serving as a stationary work station from which the EPF crew was offloading cargo.  In this capacity, Barry Graham's crewmembers provided no supervision or direction to the EPF crew, of which Plaintiff was a part.[2]  Furthermore, Barry Graham argues that it had no duty to supervise, train, or instruct Plaintiff or any of the EPF crew as there is no contractual relationship between Barry Graham and EPF.

Additionally, Barry Graham argues that there was nothing unsafe regarding the M/V GRADY G.  The equipment involved in the alleged accident, a spider basket, was owned by EPF.  There is no evidence that the M/V GRADY G was not properly secured to the platform.  In fact, Plaintiff testified that the vessel was tied to the platform and that any vessel movement which caused the spider basket to fall over onto its side occurred as a result of typical wave action.

In opposition, Plaintiff argues that Barry Graham did have a duty to supervise EPF's crew during its attempt to offload the spider basket onto the offshore platform.  In support, Plaintiff points to the testimony of Jerry Wayne Cobb, the operating caption of the M/V GRADY G at the time of Plaintiff's injury, who testified that he had the duty and authority "to stop any

---

[2] According to plaintiff himself, the EPF crew was supervised by Clarence Matthews, an employee of EPF.

operation which [he felt] to be unsafe" or which he felt involved a "safety hazard." Plaintiff argues that Cobb saw Plaintiff step into the spider basket, but elected not to stop the operation of the EPF crew.

In addition, Plaintiff argues that the actions of Cobb, who had full navigational control of the M/V GRADY G and whose responsibility it was to keep the vessel aligned with the platform by engaging the vessel's engines and steering mechanisms so as to allow the EPF crew to load the spider basket safely onto the platforms, either caused or substantially contributed to Plaintiff's injury. Plaintiff alleges that Cobb allowed the vessel to drift away from the platform, which is what caused the spider basket to fall onto its side.

In reply, Barry Graham argues that regardless of whether Cobb had authority to stop any operation, this does not create a legal duty to do so. Barry Graham points out that Plaintiff fails to cite any case law or evidence produced in discovery, such as a contract between EPF and Barry Graham,[3] that creates any legal or contractual duty between EPF and Barry Graham.

The questions before the Court are (1) whether Barry Graham had any duty to supervise the EPF crewmembers (including Plaintiff) on board the M/V GRADY G during the EPF crew's attempt to load the spider basket onto the platform, and (2) whether the

---

[3] According to Barry Graham, no such contract exists.

actions of Barry Graham caused or contributed in any way to Plaintiff's injury.

Without deciding whether Barry Graham, or Cobb, had a legal duty to supervise the EPF crew, a genuine issue of material fact exists, namely, whether Cobb allowed the vessel to drift away from the platform, and whether this is what caused or contributed to the spider basket falling onto its side.  As such, summary judgment is precluded.

**C.    Northstar and Barry Graham's Motion for Partial Summary Judgment**

Northstar and Barry Graham jointly move for summary judgment dismissing any claims against Northstar and Barry Graham by EPF and American Home.  In support, Northstar and Barry Graham argue that pursuant to the Master Service Agreement ("MSA") between EPF and Northstar, EPF and its insurers have agreed to waive subrogation against Northstar and its contractors, such as Barry Graham, in the instant matter.

In the MSA that governed the relationship between EPF and Northstar, EPF as "Contractor" agreed to procure and maintain policies of insurance in favor of what the MSA defined as the "Company Group."  The Company Group includes:

> Northstar, its subsidiary, affiliated and related companies, and their working interest owners, co-lessees, co-venturers, co-owners, contractors, and subcontractors, and any others for whom any of the foregoing may be acting; and the agents, directors,

>officers, employees, servants and insurers of any one or more of the above named or described parties . . . .[4]

(Emphasis added).  The MSA also contains a provision within the same section which states that "each policy will name Northstar as additional insured and waive subrogation against Northstar and its Insurers."

Northstar and Barry Graham argue that as Barry Graham is a contractor of Northstar, the MSA also applies to Barry Graham.  Further, the section of MSA entitled "Exhibit C Certificate of Insurance" contains a check list with a number of questions to be answered by the Contractor (EPF).[5]  The relevant portion of Exhibit C Certificate of Insurance states: "Has Insurer(s) waived subrogation against Northstar Group and its Insurers in the below mentioned insurance polies."  Northstar and Barry Graham argue that because EPF returned a Certificate of Liability Insurance[6] which clearly states "General Liability, Umbrella, Workers Comp. and Maritime Liability provide Blanket Waiver of Subrogation as required by written contract," EPF has agreed to waive any claim

---

[4] See Exhibit 1 to Northstar and Barry Graham's Motion for Partial Summary Judgment, section 3. Insurance, 3.1 Coverage.

[5] See Exhibit 1 to Northstar and Barry's Graham's Motion for Partial Summary Judgment, Exhibit C Certificate of Insurance.

[6] Such a Certificate of Insurance is required according to section 3.2 Certificates of Insurance of the MSA and serves as evidence that proper insurance has been secured.

of subrogation in this matter.[7]

In opposition, EPF argues that any waiver of subrogation was limited to "Northstar and its insurers," but did not include Barry Graham and its insurers.  And as for Northstar, EPF argues that Exhibit C to the MSA has been left blank, in other words, the "checklist" as Northstar and Barry Graham called it, has not been filled in, resulting in a finding that EPF did not waive its right to subrogation.  As such, this conflicting evidence warrants denial of Northstar's motion for summary judgment.

In reply, Northstar and Barry Graham argue that as far as Exhibit C is concerned, a party may write information directly onto the Exhibit C checklist.  However, a party may also simply attach a Certificate of Liability Insurance indicating that all of the requirements set forth in the Exhibit C checklist are agreed to.  In the instant matter, Northstar and Barry Graham argue this is what EPF has done.

The question before the Court is whether EPF waived subrogation as to Northstar and/or Barry Graham as a "contractor" of Northstar (and therefore included in the defined terms "Northstar Group" and "Company Group").  Contained within the MSA are not less than four instances in which subrogation is mentioned:

---

[7] According to Northstar and Barry Graham, the MSA, including Exhibit C, is the written contract which does in fact require a waiver of subrogation in favor of Northstar Group.

1.   Section 3.1 Coverage – directly after the definition of the "Company Group," there is a provision which states that "Coverage under all insurance required to be carried by Contractor will . . . waive subrogation against <u>Northstar and its Insurers</u>."

2.   Exhibit A, Minimum Insurance Requirements – "All policies will contain a Waiver of Subrogation in favor of <u>Northstar and its Insurers</u>."

3.   Exhibit C, Certificate of Insurance – "Has Insurer(s) waived subrogation against <u>Northstar Group and its Insurers</u> in the below mentioned insurance policies.

4.   Exhibit C, Certificate of Insurance – "Does policy cover . . . Waiver of Subrogation as to <u>Northstar</u>, its subsidiary, affiliated and related companies and Its and their working interest owners, co-lessees, co-owners, <u>contractors</u>, and subcontractors, and any others for whom any of the foregoing may be acting; and the insurers, agents, directors, officers, and employees of any one or more of the above named or described parties; and the insurers of said agents, directors, officers, and employees."

Interestingly, in Exhibit A to the MSA, the term "Northstar Group" is defined as: "Northstar, its subsidiary, affiliated and related companies and their working interest owners, co-lessees, co-owners, contractors, and subcontractors, and any others for

whom any of the foregoing may be acting; and the agents, directors, officers, and employees of any one or more of the above named or described parties." However, in the first and second instance listed above, only the term "Northstar" is referenced (rather than "Northstar Group" or even "Company Group" as defined in Section 3.1 of the MSA), while the full "Northstar Group" appears in the third instance, and the term "contractor" is included in the fourth instance.

At the very least, this results in a finding that the MSA ambiguous (i.e., whether the waiver of subrogation applies to just Northstar and its Insurers, or the Northstar Group and its Insurers). This finding is grounds to deny summary judgment as to Barry Graham, as this Court has been provided with insufficient extrinsic evidence to properly interpret the MSA in light of this ambiguity. However, it is clear based on the terms of the MSA that subrogation has been waived as to Northstar, and, as such, partial summary judgment must be granted as to Northstar on this issue. Accordingly,

**IT IS ORDERED** that Northstar's **Motion for Summary Judgment (Rec. Doc. 33)** is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Barry Graham's **Motion for Partial Summary Judgment (Rec. Doc. 38)** is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Northstar and Barry Graham's **Motion for Partial Summary Judgment of Intervention by Energy**

**Production Fabricators, L.L.C. (Rec. Doc. 40)** is hereby **GRANTED** in part and **DENIED** in part.

New Orleans, Louisiana, this 17th day of June, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE